IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE SIMS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 13-1235 |
| | ) | Magistrate Judge Maureen P. Kelly |
| EQT CORPORATION; HALLIBURTON | ) | |
| ENERGY SERVICES, INC., | ) | Re: ECF Nos. 14 and 23 |
|     Defendants. | ) | |

**OPINION**

**KELLY, Magistrate Judge**

Plaintiff Michelle Sims ("Plaintiff") has filed this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, bringing claims for gender discrimination and retaliation against Defendants EQT Corporation ("EQT") and Halliburton Energy Services, Inc. ("HES") (collectively, "Defendants").

Presently before the Court is Defendant EQT Corporation's Motion to Dismiss Michelle Sim's Complaint under Fed. R. Civ. P. 12(b)(6) or for Summary Judgment under Fed. R. Civ. P. 56, ECF No. 14, and Defendant Halliburton Energy Services, Inc.'s Motion to Compel Arbitration and to Dismiss, or in the Alternative, to Stay.[1] ECF No. 23. For the following reasons, EQT's Motion to Dismiss and HES's Motion to Compel Arbitration and Motion to Stay will be granted.

**I.	FACTUAL AND PROCEDURAL BACKGROUND**

According to the Amended Complaint, Plaintiff was employed by HES as an Operator Assistant from January 17, 2012, until May 1, 2012, when she resigned her position claiming that she was constructively discharged. ECF No. 2, ¶¶ 9, 26, 29. During her 3½ month

---

[1] Although HES has framed its Motion to Compel Arbitration as one seeking dismissal or, in the alternative, to stay the case, a stay, rather than dismissal, is the proper course of action when compelling arbitration. See Quilloin v. Tenet HealthSystem Philadelphia, Inc., 673 F.3d 221, 227 n.2 (3d Cir. 2012). See also 9 U.S.C. § 3.

employment, Plaintiff worked on property owned and controlled by EQT in New Martinsville, West Virginia. Id. at ¶¶ 9, 10.

Plaintiff alleges that she was the only female working out of the Martinsdale facility and that she was subjected to disparate treatment based upon her gender. Id. at ¶ 11. Specifically, Plaintiff complains that on or about May 1, 2012, Dave Kale ("Kale"), the worksite manager for EQT, stated that "no women belong on [his] site;" that she was assigned to share a hotel room with a male co-worker; that Jason Obordorf ("Obordorf") required her to drive to West Virginia more frequently than male co-workers; that Obordorf required Plaintiff to "drive to depot and not to the site, when male co-workers were either permitted to do so or provided a hotel room if site was more than one hour drive;" that Obordorf told her that she had to eat lunch outside and not in the trucks where the men ate lunch; that Obordorf selectively "called her out" for reporting one minute late when male co-workers arrived at the same time; that Obordorf repeatedly put his hands down his pants; that Plaintiff was required to shovel sand while five male co-workers watched; that she did not receive an equal distribution of boots and gloves as her male co-workers; and that she was told to "drive Acid truck" despite not being qualified to do so and because "she does not have facial hair." Id. at ¶¶ 12-23, 26. Plaintiff also alleges that during a radio silence various employees were speaking over the radio but only Plaintiff was singled out and told by Kale to "shut her mouth" or he would kick her off the site which made her fearful. Id. at ¶¶ 23, 25.

Although Plaintiff alleges that she made complaints of unequal treatment to Holly Miller in Human Resources at HES, Plaintiff does not indicate when she made the complaints, whether it was on more than one occasion or what specific incidents she complained of. Id. at ¶ 12.

Nevertheless, Plaintiff resigned her position on or about May 1, 2012, claiming that she was concerned for her safety due to the ongoing harassment, discrimination and retaliation.

Plaintiff filed a Complaint against Defendants on August 27, 2013. ECF No. 1. On December 20, 2013, Plaintiff filed an Amended Complaint, ECF No. 2, bringing claims against Defendants for discrimination under Title VII (Count I) and Retaliation (Count II).

EQT filed a Motion to Dismiss the Amended Complaint or for Summary Judgment on February 24, 2014. ECF No. 14. Plaintiff filed a Response to EQT's Motion to Dismiss on March 14, 2014, ECF No. 30, and on March 28, 2014, EQT filed a Reply in Further Support of its Motion to Dismiss. ECF No. 34. HES filed a Motion to Compel Arbitration and to Dismiss on March 5, 2014, ECF No. 23, and submitted a Supplemental Brief in Support of its Motion to Compel Arbitration on April 10, 2014. ECF No. 35. Plaintiff filed a Response to HES's Motion to Compel Arbitration on April 10, 2014. ECF No. 36. HES filed a Reply to Plaintiff's Response on April 24, 2014, ECF No. 37, and on May 5, 2014, having been granted leave of Court, Plaintiff filed a Sur-Reply to HES's Reply. ECF No. 40. Accordingly, both EQT's Motion to Dismiss and HES's Motion to Compel Arbitration are ripe for review.

## II. STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.

1997).  Nor must the Court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986).  Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

If the Court considers evidence outside of the pleadings, it may convert the motion to dismiss into a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Butterbaugh v. Chertoff, 479 F. Supp. 2d 485, 490 (W.D. Pa. 2007), *citing* In re Rockefeller Center Properties, Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999).  In addition, "when a motion to dismiss has been alternately framed as a motion for summary judgment and the nonmoving party has submitted evidence extraneous to its pleadings, the Court need not provide the parties with express notice of conversion."  Id., *citing* Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996).

Federal Rule of Civil Procedure 56 provides that: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of material

fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). See Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof").

The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007), *quoting* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Matreale v. New Jersey Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

Motions to compel arbitration are also reviewed under the summary judgment standard. Schwartz v. Comcast Corp., 256 F. App'x 515, 518 (3d Cir. 2007). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." Id., *citing* Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir.1980). Where a genuine

issue of fact is found to exist, the District Court must hold a trial to determine whether an arbitration agreement exists. Id.

## III. DISCUSSION

### A. EQT's Motion for Summary Judgment

EQT argues that the claims Plaintiff has brought against it should be dismissed because Plaintiff has failed to allege sufficient facts in the Amended Complaint to support a finding that she was employed by EQT and that, looking beyond the Amended Complaint, it is clear that she was not. Plaintiff, however, contends that EQT was functioning as a joint employer and that EQT's Motion to Dismiss therefore should be denied.

The law is not in dispute. As recently found by the United States Court of Appeals for the Third Circuit:

> Under *Graves v. Lowery,* 117 F.3d 723 (3d Cir.1997), a joint employment relationship exists when "two entities exercise significant control over the same employees." *Id.* at 727 (citations omitted); *see also Nat'l Labor Relations Bd. v. Browning–Ferris Indus. of Pa., Inc.,* 691 F.2d 1117, 1123 (3d Cir.1982). When determining whether an entity exercises significant control with another employer, district courts in the Third Circuit have assessed the following factors: (1) the entity's "authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours"; (2) its "day-to-day supervision of employees, including employee discipline"; and (3) its "control of employee records, including payroll, insurance, taxes and the like." *See, e.g., Abdallah v. Allegheny Valley Sch.,* No. 10–5054, 2011 WL 344079, *3 (E.D.Pa. Feb. 1, 2011); *Butterbaugh v. Chertoff,* 479 F.Supp.2d 485, 491 (W.D.Pa.2007); *Cella v. Villanova Univ.,* No. 01–7181, 2003 WL 329147, *7 (E.D.Pa. Feb. 12, 2003).

Plaso v. IJKG, LLC, 553 F. App'x 199, 204-05 (3d Cir. 2014).

In this case, the only references to EQT in the Amended Complaint appear at paragraphs 9, 13, 23 and 25, wherein Plaintiff alleges that she was employed by HES but worked on property owned and controlled by EQT; that Kale, the EQT work site manager, stated that no women belonged on the site; and that Kale singled her out during a radio silence and told her to

6

shut her mouth or he would kick her off the site. These assertions, however, do not speak to any of the factors set forth by the Third Circuit Court of Appeals relevant to finding joint employer status. This Court therefore finds that Plaintiff has failed to plead sufficient facts to withstand a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

Although the United States Court of Appeals for the Third Circuit has held that when dismissing a civil rights case for failure to state a claim, a court must give the plaintiff an opportunity to amend the complaint whether or not the plaintiff has asked to do so, the Court is not required to allow an amended complaint to be filed where it would be inequitable or futile. See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007), *citing* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

Here, it appears that allowing Plaintiff to file another Amended Complaint would be futile given the documents presently before the Court which both parties have provided to support their respective positions. EQT has submitted a Declaration of James E. Helmick, the Vice President of Completions for EQT Production Company (a subsidiary of EQT), with its opening brief and a Supplemental Declaration of James E. Helmick, along with a copy of the master services agreement ("MSA") entered into between EQT and HES, with its reply brief. ECF Nos. 17-1, 34-1. These documents show that Plaintiff was hired by, and worked for, HES; that EQT never entered into an agreement with Plaintiff to perform work for EQT; that EQT never hired Plaintiff to work at any of EQT's sites; that EQT had no authority to set forth the terms and conditions of employment for Plaintiff or any of HES's employees; that HES set forth the terms and conditions of Plaintiff's employment including her start date, salary, benefits, paid time off; that Plaintiff, along with all the other HES employees working on the same EQT job site, were supervised on a daily basis by an HES site manager; that EQT provided no supervision

7

or direction to Plaintiff; that EQT had no authority to fire HES employees; that EQT has never compensated Plaintiff for any of the work she performed at any of EQT's sites; that EQT does not maintain any payroll, insurance, tax or personnel records for HES employees; and that EQT never issued Plaintiff an IRS Form W-2 or 1099. ECF No. 17-1, ¶¶ 8-16.

Moreover, the MSA entered into between HES and EQT describes the independent contractor relationship between the two parties and the independent employment status of HES employees working on EQT sites. ECF No. 34-1: p. 2-3, ¶¶ 2-5; p. 11, ¶¶ 14.1, 14.2. Further, the MSA provides:

> It is further understood and agrees that all persons hired or assigned by Contractor to perform labor or services for the Work required under this Agreement are, and shall remain during the performance of this Agreement, Contractor's employees for *all* purposes . . . . It is further agreed that from time to time as the circumstances may require, the Authorized Representative of Company may direct any employee or employees of Contractor to a particular work site or location, or may provide instructions concerning tasks to be performed by them, but no such instruction or direction shall be construed by Contractor to constitute control of the manner or method of the employee's work, nor shall any such instruction or directions constitute the employee to be the employee of Company for *any* purpose.

ECF No. 34-1: p. 3, ¶ 5; p. 11, ¶ 14.3 (emphasis added). Under these circumstances, EQT cannot be considered Plaintiff's joint employer.

Plaintiff has nevertheless submitted her own affidavit and argues that EQT was a joint employer based on the fact that Kale was able to terminate and/or discipline HES employees by removing them from the job site; that Kale stated he was the boss on the site; that following a safety violation where radio silence was broken, Kale reprimanded Plaintiff and held a meeting; that EQT personnel held daily safety meetings; and that Kale supervised from the Technical Control Center where he instructed how many pumps should run and the type of sand and

8

chemicals to be used. None of these factors, however, are sufficient either alone or standing together to create a material issue of fact with respect to EQT's employer status.

First, having the authority to remove an employee from the property is not the equivalent of terminating their employment; nor does it evidence the necessary control over the employee to establish joint employer status. See Mendez v. Puerto Rican Int'l Companies, Inc., 2013 WL 5529755, at *7 (D.V.I. Oct. 7, 2013) (rejecting the notion that removing personnel from its refinery was sufficient to establish joint employer status). Second, Kale's conduct is entirely consistent with the language of the MSA which provides that authorized representatives of EQT may direct or provide instruction to any employee of HES without being construed as the employee's employer. See Plaso v. IJKG, LLC, 553 F. App'x at 203 ("[t]hat [the defendant] provided some direction in the work assigned to [the plaintiff] . . . does not raise a dispute of material fact as to whether she was an employee of [the defendant]"); Cella v. Villanova Univ., 2003 WL 329147, at *1, *8 (E.D. Pa. Feb. 12, 2003), *aff'd*, 113 F. App'x 454 (3d Cir. 2004) (the fact that a supervisor told the plaintiff that she was his boss and often directed the plaintiff to complete certain tasks did not evoke joint employer status). Third, Plaintiff's argument appears to generally misconstrue the nature of the relationship between EQT and HES. EQT is a natural gas producer and HES was a contractor hired to provide hydraulic fracking services on EQT's wells. ECF No. 17-1, ¶¶ 3-5. As such, the work was necessarily performed on EQT's property. It therefore follows that EQT would retain a certain amount of control over the project at its own site and a certain number of responsibilities, including maintaining safety standards for everyone on the site. Id. at ¶¶ 17-18. See Mendez v. Puerto Rican Int'l Companies, Inc., 2013 WL 5529755, at *7 (finding that the company's efforts to ensure compliance with safety procedures and maintain control over its premises did not evidence supervision or control of the plaintiff's

work).  See also Plaso v. IJKG, LLC, 553 F. App'x at 201, 203 (finding that the defendant was not a joint employer notwithstanding the fact that the plaintiff worked five days a week at the defendant's facility where she had unfettered access; that the plaintiff interacted daily with the defendant's executives and received assignments from them; that the plaintiff was provided with an e-mail, telephone accounts, an access pass, and an office by the defendant; that the plaintiff gave assignments to two of the defendant's employees and was asked by the defendant to evaluate them; and that the plaintiff represented the defendant to physician practices in the community and trained the defendant's future Vice President of Business).

These circumstances, coupled with Plaintiff's failure to provide any evidence from which it could be inferred that EQT shared matters governing the essential terms and conditions of her employment precludes a finding that EQT exercised significant control over Plaintiff or any other HES employee so as to be considered a joint employer.  See Cella v. Villanova Univ., 2003 WL 329147, at *7, *quoting* Nat'l Labor Relations Bd. v. Browning–Ferris Indus. of Pa., Inc., 691 F.2d 1117, 1123 (3d Cir. 1982) (joint employers will be found where both exert significant control over the same employees or "share or co-determine those matters governing essential terms and conditions of employment") (internal quotations omitted).  Thus, allowing Plaintiff to file another amended complaint would be futile and the Court declines to do so.[2]  Accordingly, EQT's Motion to Dismiss will be granted.

### B. HES's Motion to Compel Arbitration and to Dismiss

HES argues that Plaintiff should be compelled to submit her claims to arbitration because she agreed at the inception of her employment to arbitrate all claims arising from or relating to

---

[2] Plaintiff alternatively asks that she be permitted to conduct discovery to "further understand the relationship between EQT and Halliburton on the job sites."  ECF No. 30, p. 5.  In light of the record already before the Court and Plaintiff's complete failure to point to any evidence from which joint employer status can be discerned, the Court will deny the request.

10

that employment relationship pursuant to HES's Dispute Resolution Program ("DRP"). Plaintiff, however, contends that she never agreed to the arbitration terms at issue and, thus, is not bound by them and that the employment contract is nevertheless unenforceable as both procedurally and substantively unconscionable.

It is undisputed that the employment contract at issue in this case is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq*, which provides that "a written provision" showing an agreement to settle disputes by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 522 (3d Cir. 2009), *quoting* 9 U.S.C. § 2. Thus, "[b]efore compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." Id. *citing* Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009). In deciding whether the parties have agreed to arbitrate, the court is to apply "ordinary state law principles that govern the formation of contracts." Id. at 524, *quoting* First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). See Schwartz v. Comcast Corp., 256 F. App'x 515, 518 (3d Cir. 2007). Under Pennsylvania law, to determine whether a contract was formed, a court must look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration. Id. at 533, *citing* Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd., 739 A.2d 133, 136 (Pa. 1999). Only the first two factors are at issue in this case.

First, the record shows that Plaintiff applied for employment with HES by filling out an online application. ECF No. 23-1, pp. 7-17. The application contained a paragraph that stated the following:

> I agree that, in return for its consideration of my application for employment, any dispute between Halliburton and me related to the application process will be resolved under the Halliburton Dispute Resolution Program ("DRP"), and that I may obtain a copy of the DRP from the Human Resource Department. I understand that this means that disputes involving legal issues must be submitted to binding arbitration, and that I am waiving any right to maintain a lawsuit or have a jury trial for any such dispute. I also understand that this does not obligate Halliburton to employ me, but that if I am employed, any dispute between Halliburton and me relating to my employment also will be subject to the DRP.

Id. at p. 15. Following the paragraph was a box that Plaintiff checked acknowledging her "receipt, understanding and agreement with this disclosure." Id.

Second, Plaintiff subsequently received an offer letter from HES which stated:

> Your acceptance of employment means you also agree to and are bound by the terms of the Halliburton Dispute Resolution Program . . . . The Halliburton Dispute Resolution Program binds the employee and the Company to handle workplace problems through a series of measures designed to bring to timely resolution. This will be true during your employment and after your employment should you terminate.

Id. at p. 20. Plaintiff checked the "accept" option, signed the letter, and returned it to HES. Id. at p. 21.

Plaintiff began her employment with HES on January 17, 2012. HES has represented, and Plaintiff does not dispute, that HES's DRP was accessible to all of its employees, including Plaintiff, on HES's intranet website. ECF No. 23-2, p. 3, ¶5. In relevant part, the DRP provides that:

> All Disputes not otherwise settled by the Parties shall be finally and conclusively received through arbitration under this Plan and the Rules, instead of through trial before a court.

> \* \* \*
>
> The substantive legal rights, remedies and defenses of all Parties are preserved. In the case of arbitration, the arbitrator shall have the authority to determine the applicable law and to order any and all relief, legal or equitable, including punitive damages, which a Party could obtain from a court of competent jurisdiction on the basis of the claims made in the proceeding.
>
> \* \* \*
>
> Notwithstanding the provisions of the preceding subsection in any proceeding before an arbitrator, the arbitrator, in the arbitrator's discretion, may allow a prevailing Employee or Applicant reasonable attorney's fees, expert witness' fees, and other costs which may be allowable under the Federal Rules of Civil Procedure as part of the award. The discretion to allow an award of fees under this subsection is in addition to any discretion, right or power which the arbitrator may have under applicable law.
>
> \* \* \*
>
> Proceedings under the Plan, including arbitration, shall be exclusive, final and binding method by which Disputes are resolved.

ECF No. 23-2, pp. 9, 11.

Under these circumstances, the Court is hard-pressed to find that Plaintiff did not manifest an intention to be bound by the arbitration provisions in the DRP or that the terms of the arbitration agreement are sufficiently indefinite to be unenforceable.

Plaintiff nevertheless argues that HES's failure to personally hand Plaintiff a copy of the DRP precludes a finding that she agreed to its terms and that, because neither the employment application nor the offer letter included "the actual terms or even a summary of the [DRP,] . . . the [DPR] lacks 'sufficiently definite contract terms. . . .'" ECF No. 36, p. 4. The Court disagrees.

Plaintiff completed the online application form wherein she was specifically advised that any dispute between her and HES relating to the application process as well as any future

13

employment issues, should she be hired, would be resolved under the DRP, and that the DRP provided that disputes involving legal issues must be submitted to binding arbitration. Plaintiff also was advised that under the DRP, which was available to her from the Human Resources Department, she would be waiving any right to maintain a lawsuit or have a jury trial for any such dispute. Plaintiff acknowledged and accepted those terms. In addition, Plaintiff was informed in the offer letter that by accepting the offer of employment she was agreeing to be bound by the terms of the DRP as described in the application, including the arbitration provision. Plaintiff acknowledged and accepted those terms. Moreover, the DRP itself sets forth the fact that resolution through arbitration would be final; that the substantive legal rights, remedies and defenses of all parties would be preserved; that the arbitrator would determine the applicable law and order any relief that a party could obtain in a court of competent jurisdiction; that that the arbitrator may allow a prevailing employee reasonable attorney's fees, expert witness fees and other appropriate costs; and that the arbitration proceedings described therein shall be the exclusive, final and binding method by which disputes are resolved. These terms are sufficiently definite to be enforceable.

Furthermore, these same facts demonstrate that Plaintiff was sufficiently informed of the terms of employment. By accepting the offer of employment Plaintiff manifested an intent to be bound by those terms including her agreement to arbitrate any employment disputes between her and HES. Plaintiff cannot now be heard to say she did not agree to do so simply because she was not personally handed a copy of the DRP. Indeed, Plaintiff was not only aware of the most important terms of the arbitration provision contained in the DRP from the application form but it is clear that Plaintiff had access to the DRP from Human Resources and on HES's intranet website. See Schwartz v. Comcast Corp., 256 F. App'x at 520 (finding that the plaintiff, who

14

had notice that contract terms were available and accessible on the defendant's website was bound by those terms).

Nor do the cases upon which relies compel a different result. In Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, the arbitration provision at issue was contained in the defendant-law firm's by-laws which was not mentioned in any agreement or document signed by the plaintiff relative to her employment. Thus, the plaintiff's lack of awareness of the arbitration provision was not because of her own failure to read the contract or any documents referred to therein. Id. at p. 163. The court therefore concluded that the plaintiff's claim that she was unaware of, and not provided with, the by-laws reflected the defendant's failure to obtain her consent to be bound by the arbitration provision in the by-laws thereby creating a genuine issue of fact regarding the existence of an agreement to arbitrate. Id. Here, however, unlike in Kirleis, Plaintiff was not only aware of the arbitration provision and its significant terms, which she readily accepted even prior to her employment, but she was aware that she could access the DRP by either contacting Human Resources or accessing HES's intranet website.

Similarly, in Quiles v. Fin. Exch. Co., 879 A.2d 281 (Pa. Super. Ct. 2005), although the plaintiff signed an Employee Acknowledgement Form, which indicated that she had received, read and understood the company's Handbook and agreed to be bound by its terms, the record also showed that the Acknowledgment Form simply stated that the Handbook included a DRP "and provisions relating to arbitration," without mentioning that the plaintiff would be waiving her right to a judicial forum. Further, the evidence established that the plaintiff requested a Handbook but was never provided with one and that the plaintiff signed the Acknowledgment Form under pressure from her supervisor. Moreover, the court noted that the plaintiff, who was from Puerto Rico, had difficulty with the English language and was not familiar with the word

15

"arbitration." Id. at pp. 283-84, 287. Under these circumstances, the court concluded that the plaintiff could not have validly agreed to arbitrate her claims without being provided with a copy of the Handbook which outlined the DRP and the arbitration process. Id. at p. 287-88.

Here, unlike in Quiles, the application form did not simply state that the DRP included provisions "relating to arbitration," but specifically informed Plaintiff that under the DRP disputes would be submitted to arbitration, that the results would be binding, and that she would be waiving any right to maintain a lawsuit or have a jury trial. Moreover, Plaintiff does not allege that she did not understand this information when she signed the application or that she executed the application form or the offer letter under pressure. Nor did Plaintiff ever request a copy of the DRP from Human Resources as she was advised she could do. Quiles, therefore, does not provide the basis for finding that Plaintiff did not manifest an intent to be bound by the terms of the arbitration provision merely because HES failed to personally provide Plaintiff with a copy of the DRP. See Pentecostal Temple Church v. Streaming Faith, LLC, 2008 WL 4279842, at *5 (W.D. Pa. Sept. 16, 2008) (rejecting the plaintiff's argument that certain terms of the Purchase Order should be disregarded because they were only available on the defendant's website, finding that the plaintiff could have read the provisions and that failure to do so did not excuse compliance).[3]

Plaintiff also argues that HES's DRP is unenforceable because it is both procedurally and substantively unconscionable.

---

[3] In addition, as pointed out by HES, the application of Kirleis and Quilles to this case is further limited because the respective courts applied a higher standard of review under the Pennsylvania Arbitration Act to the arbitration agreements at issue. The United States Court of Appeals for the Third Circuit, however, has held that requiring that an agreement to arbitrate be "express" and "unequivocal" flies in the face of the FAA, which Congress enacted to put arbitration agreements on the same footing as other contracts. Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d at 529-532.

Pursuant to the FAA, arbitration agreements may be held unenforceable "upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. As such, "generally applicable state law contract defenses, such as fraud, duress, or unconscionability . . . may be applied to invalidate arbitration agreements." Sally v. Option One Mortg. Corp., 925 A.2d 115, 119 (Pa. 2007), *citing* Doctor's Ass'n, Inc. v. Casarotto, 517 U.S. 681, 687 (1996). Under Pennsylvania law, to prove a contract is unenforceable as unconscionable, the party must prove that the contract is both procedurally and substantively unconscionable. Id. Procedural unconscionability will be found where "one of the parties lacked a meaningful choice about whether to accept the provision in question," whereas substantive unconscionability requires a showing that "the provision unreasonably favors the party asserting it." Id. The burden of proof concerning both elements lies with the party challenging the agreement. Id. at 120.

In this case, the Court need not address Plaintiff's arguments relative to procedural unconscionability since it is clear that she is unable to establish that the DRP and/or its arbitration provisions are substantively unconscionable.

In Edwards v. HOVENSA, LLC, 497 F.3d 355 (3d Cir. 2007), the arbitration clause at issue was contained in a Dispute Resolution Agreement ("DRA") that the plaintiff had entered into with his prospective employer, Wyatt, V.I., Inc., a contractor for the defendant, HOVENSA, LLC. By signing the DRA, the plaintiff agreed to:

> resolve any and all claims, disputes or controversies arising out of or relating to ... (4) any claims for personal injury or property damage arising in any way from my presence at the HOVENSA refinery that are not covered by the [Collective Bargaining Agreement ]; exclusively and by final and binding arbitration before a neutral arbitrator pursuant to the American Arbitration Association's ("AAA") National Rules for the Resolution of Employment Disputes ["National Rules"], a copy of which is available at www.adr.org or from Wyatt. This agreement extends to such disputes with or claims against Wyatt, HOVENSA, LLC, other contractors or subcontractors employed at the HOVENSA refinery, and any of their

> related or affiliated companies, entities, employees or individuals (as
> intended third party beneficiaries to this agreement).

Id. at 356. The arbitration provisions also provided, however, that the plaintiff's employer and third-party beneficiaries like the defendant, retained the option of litigating any claims they might have against the plaintiff. Id. at 363. Despite this disparity in the consideration exchanged between the parties, the United States Court of Appeals for the Third Circuit found that the plaintiff could not show that the DRA was substantively unconscionable. In so finding, the Court of Appeals for the Third Circuit relied in particular on Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) ("Gilmore"), in which the United States Supreme Court rejected the notion that Congress intended to preclude claims brought under the Age Discrimination in Employment Act "from waiver of a judicial forum," and noted that the purpose of the FAA "was to reverse the long standing hostility toward arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." Id. at 363, *quoting* Gilmore, 500 U.S. at 24, 25. Finding that Gilmore was grounded on the premise that arbitration clauses merely substitute one procedurally fair forum for another, the Third Circuit Court of Appeals concluded that:

> Where, as here, an arbitration provision requires only one side to submit its claims (personal injury or otherwise) to arbitration, but does not alter or limit the rights and remedies available to that party in the arbitral forum, it cannot be said that the parties' agreement is substantively unconscionable under the rationale of *Gilmer*.

Id. at 364.

In the instant case, there is nothing in the DPR that alters or limits the rights and remedies available to Plaintiff in the arbitral forum. To the contrary, as set forth above, the DRP specifically preserves the "substantive legal rights, remedies and defenses of all Parties," and gives the arbitrator the authority "to determine the applicable law and to order any and all relief,

legal or equitable, including punitive damages, which a Party could obtain from a court of competent jurisdiction." The arbitrator also has the authority to allow a prevailing employee or applicant reasonable attorney's and witness' fees, and any other costs which may be allowable under the Federal Rules of Civil Procedure.[4] The DRP therefore merely shifts the forum for resolving disputes to arbitration while leaving the parties' rights and obligations under substantive law intact. Thus, under Edwards, this Court is unable to find that the DRP, or more specifically the arbitration provisions contained therein, is substantively or otherwise unconscionable. See Quilloin v. Tenet HealthSystem Philadelphia, Inc., 673 F.3d at 230, *quoting* Edwards v. HOVENSA, LLC, 497 F.3d at 364) ("[a]n arbitration agreement cannot be construed as substantively unconscionable where it 'does not alter or limit the rights and remedies available to [a] party in the arbitral forum. . . .'"); Williams v. Nabors Drilling USA, LP, 2014 WL 710078, at *4 (W.D. Pa. Feb. 25, 2014) (same). The DRP is therefore enforceable and Plaintiff is obligated under its terms to submit her claims to arbitration.

IV. **CONCLUSION**

For the foregoing reasons, both EQT's Motion to Dismiss and HES's Motion to Compel Arbitration and Motion to Stay are properly granted. Accordingly, the following Order is entered:

**ORDER**

AND NOW, this 4th day of September, 2014, upon consideration of EQT Corporation's Motion to Dismiss Michelle Sim's Complaint under Fed. R. Civ. P. 12(b)(6) or for Summary Judgment under Fed. R. Civ. P. 56, Plaintiff's Response thereto, and EQT's Reply Brief, IT IS

---

[4] As pointed out by HES, it is notable that the DPR does not allow HES to recover any fees should it be the prevailing party.

19

HEREBY ORDERED that EQT's Motion to Dismiss, ECF No. 14, is granted, and the claims brought against EQT are dismissed with prejudice.

Further, upon consideration of Defendant Halliburton Energy Services, Inc.'s Motion to Compel Arbitration and to Dismiss, or in the Alternative, to Stay, Plaintiff's Response thereto, and the parties' Reply Briefs, IT IS HEREBY ORDERED that HES's Motion to Compel Arbitration and to Stay, ECF No. 23, is granted, and the Clerk is directed to stay the case.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if Plaintiff wishes to appeal from this Order she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record Via CM-ECF